545 So.2d 1248 (1989)
Charles A. BARTON, Plaintiff/Appellant,
v.
WAUSAU INSURANCE COMPANY, et al., Defendant/Appellee.
No. 20588-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
*1249 Fuhrer, Flournoy, Hunter & Morton by George A. Flournoy, Alexandria, for plaintiff/appellant.
Gist, Methvin, Hughes & Munsterman by Howard B. Gist, III, Alexandria, for defendant-appellee.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This is a workers compensation case in which the trial court determined the claimant was temporarily and totally disabled from the time of the accident until his doctor conditionally released him to return to work. The court denied the claim for supplemental earnings benefits ("SEB") after the conditional release, but awarded penalties, attorney fees and interest. The claimant appeals, contesting the denial of SEB. The insurer answers, contesting part of the award for temporary, total disability, as well as the penalties, attorney fees and interest. For the reasons expressed, we amend the judgment to include an award of SEB, and otherwise affirm.
Facts
The claimant, 52-year-old Charles A. Barton, had worked a rock drill for Winn Rock Inc. about six or seven years, and served as lead drill operator about three, before the accident. On December 20, 1984, he went to Winn Rock's shop and sat on a chair that unexpectedly fell over backwards. His elbow struck the concrete floor and his head hit some timbers supporting a motor in the shop. Barton did not report the accident that day; in fact, he completed the work day as scheduled.
The following evening, however, he began experiencing shooting pains in his arm and chest. He went to the hospital in Winnfield, where he was suspected to have had a heart attack. Dr. Mosley kept him there for a few days. After this, Barton returned to work and resumed his normal duties at his usual pay. Meanwhile Dr. Mosley continued to treat the arm and neck *1250 pain with pills. Because the pain persisted Barton went to a hospital in Ruston, where an EMG by Dr. Smith showed a fairly certain ruptured disc. Barton left work on May 5, 1985, when he could no longer endure the pain. At this time Barton reported the accident as work-related. Winn Rock's insurer, Wausau, began paying medicals and weekly benefits.
Barton was referred to a neurosurgeon, Dr. Fresh, in Alexandria. Dr. Fresh confirmed the diagnosis of a ruptured disc at C5-6 and operated. Barton was at home by May 17 to begin his recuperation. The pain and stiffness in his neck persisted, but gradually diminished. On January 13, 1986, Dr. Fresh suggested that Barton return for a "trial of work at normal duty." Barton went back the next day as a drill operator at his previous salary. He continued to attend physical therapy sessions with Dr. Fresh, however, and reported to him that he experienced discomfort when performing his work functions. Wausau quit paying benefits when it received notice from Dr. Fresh on January 17.
Six weeks later, on February 27, Winn Rock terminated Barton. His manager, Mr. Daughtry, testified this was part of a general reduction in work force, as four or five employees were dismissed simultaneously, but Barton's position was not eliminated. Mr. Daughtry admitted he was not privy to the decision to fire Barton, and Barton felt he was discharged because he could not do his job. He drew unemployment benefits for several months; for three months he worked as a backhoe operator on a temporary construction job that paid considerably less than he made at Winn Rock. Dr. Fresh finally discharged him in November 1986. He felt Barton had 75% of left rotation, 75% of flexion (ability to look down) and 50% of extension (ability to look up); and assigned an overall 75% function of the neck. This condition is permanent and will cause problems in any work that requires looking up, and intermittent problems in heavy lifting.
The trial court concluded that Barton was temporarily, totally disabled from the time of the accident in December 1984 until he quit in May 1985, since he was working in pain; the court ordered benefits for this period. For the period from May 1985 until January 1986, Wausau paid weekly benefits based on a 40-hour week; however, Barton typically worked overtime, which would have increased his comp benefits. Feeling the insurer had within its control the means of obtaining the correct wage data, the trial court imposed penalties of 12% on the excess due. The court also awarded attorney fees of $4,000 and interest of 12% on all awards. As for the period since January 14, 1986, the trial court denied Barton's claim for SEB, holding in essence that the injury and residual disability have not prevented Barton from earning 90% of his pre-injury wage. Barton has appealed the last finding; Wausau has answered, appealing the rest.

Temporary, Total Disability
Wausau appeals the trial court's finding that Barton was temporarily, totally disabled from December 20, 1984 until May 5, 1985, since he worked the entire time and earned wages. Citing LSA-R.S. 23:1201, Wausau contends there should be no finding of disability until there is a covered injury "and resulting loss of income."
Compensation for temporary, total disability is governed by LSA-R.S. 23:1221(1) which, at the time of Barton's injury, provided:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
A claimant seeking benefits for temporary, total disability must prove his case by a preponderance of evidence. Price v. Fireman's Fund Ins., 502 So.2d 1078 (La. *1251 1987); Green v. Jackson Rapid Delivery Inc., 506 So.2d 1345 (La.App. 2d Cir.1987).
Revisions to the comp law in 1983 elevated the burden of proof for cases of permanent, total disability. Specifically they required proof by clear and convincing evidence and excluded benefits for workers who despite their injuries may accept "odd lot" jobs or may work in pain. See LSA-Acts 1983 Ex.Sess., No. 1; Malone & Johnson, Workers' Compensation, § 276.5 (1989 p.p.). These enhanced requirements were not imposed on claims for temporary, total disability. We have therefore concluded that the "working in pain" doctrine is applicable to temporary, total cases. Johnson v. Monroe Pulpwood Co., 505 So.2d 862 (La.App. 2d Cir.1987). See also Thomas v. Elder Pallet & Lumber Sales Inc., 493 So.2d 1267 (La.App. 3d Cir.1986), writ denied 497 So.2d 312 (La.1986).
Under the "working in pain" doctrine, if a claimant's injuries are such that the performance of important functions of his old trade involve substantial pain and suffering, he is deemed totally disabled. See Walker v. Gaines P. Wilson & Son, 340 So.2d 985 (La.1976); Johnson v. Monroe Pulpwood Co., supra; Malone & Johnson, § 273. The "working in pain" doctrine is not limited to workers who make tentative, unsuccessful efforts to work. A person may perform substantial work even though he is later determined to be totally disabled. See Meche v. Arthur G. McKee & Co., 415 So.2d 494 (La.App. 1st Cir.1982); LeBlanc v. Mangel's of La. Inc., 306 So.2d 422 (La.App. 3d Cir.1975), writ denied 310 So.2d 639 (La.1975).
Admittedly Barton did not miss much work between the time of the accident and May 1985. However, he testified that he was in substantial pain; his neck was "hurting bad." R.p. 115. He sought medical attention constantly throughout the time. Mr. Daughtry, his foreman, commented that Barton did not complain on the job, but Barton was compelled, for financial reasons, to work until the pain literally stopped him. His main duties involved "looking up the boom," or constantly bending his neck upwards; even after surgery and recovery, he had a residual limitation of motion in the neck. Fresh's Dep., 6-7. The trial court was not wrong in concluding from this evidence that Barton was working in pain from December 1984 until May 1985.
We concede that R.S. 23:1201 B mentions both "temporary total disability" and "resulting loss of income" as activating the duty to pay benefits. We feel, however, that § 1201 B seeks to establish the time frame for payments and to absolve from penalties an insurer who misses the 14-day deadline because it is not aware of a loss of income. See Malone & Johnson, § 389. This statute does not purport to redefine temporary, total disability, and it does not supersede R.S. 23:1221(1) or the jurisprudence under it. If the legislature had intended such a result, it would have expressed itself more clearly.
Wausau's first assignment therefore does not present reversible error.

Supplemental Earnings Benefits
Barton appeals the trial court's refusal to award him SEB. His first assignment contests the trial court's finding that Winn Rock terminated him in February 1986 for economic reasons. According to Barton, he was released because his pain and limited motion in the neck reduced his value in a highly competitive workplace; a worker with physical limitations is the first to be laid off in tight times. Consequently, he argues, his injury resulted in an inability to earn wages equal to 90% of his pre-injury wage. He contends that after he proved loss of wage and causation by a preponderance, the burden shifted to the insurer to prove there is no employment or self-employment which he is able to perform, is offered to him or is available to him in his or the employer's reasonable geographic area. On this burden, Barton claims, Wausau offered no evidence at all. He claims he is therefore entitled to SEB.
The statutory authority for SEB is LSA-R.S. 23:1221(3). At the time of Barton's injury, it provided as follows:

*1252 (3) Supplemental earnings benefits
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. * * *
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain. * * *
A claimant for SEB must prove by a preponderance of evidence that his work-related injury rendered him unable to earn 90% of his pre-injury wage. Gaspard v. St. Paul Fire & Marine Ins. Co., 483 So.2d 1037 (La.App. 3d Cir.1985); Williams v. Avondale Indus. Inc., 521 So.2d 491 (La. App. 4th Cir.1988), and citations therein. Both Gaspard and Williams refer to this as the claimant's "prima facie case." The burden then shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available in the reasonable geographic region. Williams, supra; Kreider v. Schulin's Appliance Serv. Inc., 524 So.2d 153 (La.App. 4th Cir.1988). If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. § 1221(3)(c)(ii).
In the instant case the trial court apparently found that Barton did not make his prima facie case of entitlement. Barton showed that he was not working for any wage, except for brief work on a now-completed construction job. However, the court accepted Mr. Daughtry's explanation that Barton's layoff from Winn Rock was a result of overall economic conditions, and not Barton's physical condition. We agree that the economic scene was a factor in Barton's inability to work. However, the record also supports Barton's claim that substantial pain was a major and critical factor.
A major basis of the trial court's conclusion was its impression of Mr. Daughtry's credibility. Like the trial court, we feel he was sincere. However, he admitted he was not privy to the discussions whereby certain workers were discharged. R.p. 167. The decisions were made by a Mr. Lewis and a Mr. Dunham, who were not called to testify. We note particularly that when Barton was discharged, his position was not eliminated; rather, another employee got his job. Under the circumstances, we question whether the economics of the decision were not the economics of using a healthier worker who, as Barton said, "can do more than just sit there" all day. An employee with a stiff back is often the first to be laid off in slack economic times. See Comeaux v. Cameron Offshore Serv. Inc., 420 So.2d 1209 (La.App. 3d Cir.1982); Malone & Johnson, § 274. Because Mr. Daughtry did not have first-hand knowledge of the decision to fire Barton, and because the alleged economic need to discharge him seems foiled by the retention of his position, we find that Barton's permanent, partial disability was indeed a significant factor in the decision to lay him off. This supports the claim that the work-related injury caused his inability to earn 90% of his former wages.
Furthermore, there were Barton's own complaints of "severe shooting pain" when he returned to work in January 1986. He continued to take pain medicine and to attend physical therapy several times a week on company time. While pain is subjective, courts are inclined to accept the complaints *1253 as credible when they are corroborated by other evidence. Valley v. American Ins. Co., 510 So.2d 449 (La.App. 3d Cir.1987), writ denied 514 So.2d 130 (La.1987). Dr. Fresh considered Barton "straightforward" in reporting his condition, and we have no reason to doubt the sincerity of Barton's testimony. Dr. Fresh found a 50% loss of extension and a 25% disability; these are permanent and will cause problems in many forms of physical labor that Barton might undertake. He released Barton for a "trial" return to work at normal duties in January 1986, noting that he might not be able to tolerate the amount of turning required for his job. To do his job, Barton constantly had to lean out of the cab and look up the boom; this is precisely the kind of neck motion that will aggravate his condition. Even Mr. Daughtry recognized there was still some problem because Barton was missing work to attend therapy in February 1986. The evidence supports Barton's complaints of substantial pain when he returned to work.
The trial court accepted Barton's complaints as to the first few months after the injury; we see no reason to reject it as to the later period. The latter are corroborated by the same evidence as the former. In both instances, Barton was a steady, solid employee, willing to work in pain and slow to complain. However, he had physical limitations which caused him substantial pain in performing his job.
At the time of trial Barton was 53 years old, had little education and no vocational training, and had an employment record limited to unskilled labor. He testified that the entire time he has been unemployed, he combed the area for work but was unsuccessful. He now earns less than 90% of his pre-injury wages. Barton made the prima facie case as required by LSA-R.S. 23:1221(3)(a).
In rebuttal, Wausau presented no evidence that there was employment within Barton's physical ability, either offered, tendered or available within either party's reasonable geographic region. Barton is therefore entitled to SEB in accordance with the statute, until such time as employment or self employment, as defined in the statute, is proven to be offered, tendered or available. Rehabilitation services may also be pursued. LSA-R.S. 23:1226.
The judgment will be amended accordingly.

Penalties
Wausau contests the trial court's assessment of penalties on the difference between what it actually paid in benefits and what was ultimately determined to be due for the period of May 1985 to January 1986. Wausau paid comp based on a 40-hour workweek, without overtime; however, Barton usually worked overtime, thus increasing his weekly benefit. When Winn Rock answered Barton's interrogatories in early 1987, Wausau discovered the discrepancy and made an adjustment.
The authority for imposing penalties is LSA-R.S. 23:1201 E. At the time of Barton's injury, it provided as follows:
E. If any installment of compensation payable without an order is not paid within [14 days after the employer has knowledge of the injury and loss], there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. * * * (As amended by LSA-Acts 1983 Ex.Sess., No. 1.)
The statute therefore authorizes penalties upon proof of late payment. It has been interpreted to penalize payments that were incomplete for failure to include overtime wages in the calculation. Shuff v. Liberty Mut. Ins. Co., 134 So.2d 707 (La. App. 3d Cir.1961), writ denied (not reported, La.1962). In the instant case, Wausau was late in paying the portion of the benefit attributable to overtime.
Wausau cites Barton's testimony that he listed only 40 hours per week in a "Statement *1254 of Facts" he submitted on June 10, 1985. According to Wausau, this proves Barton provided the information on which his benefits were calculated, thus amounting to a "condition over which the insurer had no control."
The trial court noted this, but also observed that the "Statement" was completed in two different handwritings and inks; the portions for total weekly and monthly wage were not filled in by Barton. Rather, Barton was only asked to fill in the number of hours worked per day and number of days worked per week. He was not asked about overtime. Furthermore, Barton testified this was the only form he received.
An accurate account of Barton's true earnings were available from Winn Rock's records. Mr. Novak, Wausau's senior claims representative, said check stubs were the best source of this information. Wausau could have obtained the correct figures from Winn Rock since it did not elicit complete data from Barton himself. Mr. Novak admitted that he did not "follow up" on the Statement until 1987. The court concluded the evidence showed "less than thoroughness and attention to detail" in processing the claim. This does not appear plainly wrong.
Furthermore, we find nothing to indicate that nonpayment resulted from conditions beyond the insurer's control. At trial Mr. Novak admitted not knowing who handled the correspondence at various times, whether it was the New Orleans office or the West Monroe office. Perhaps if one office or agent had worked the entire case, the confusion would not have arisen. An insurer, however, cannot urge its own poor clerical work to escape penalties for nonpayment. LaHaye v. Westmoreland Cas. Co., 509 So.2d 748 (La.App. 3d Cir.1987). There is also no indication that anyone "reasonably controverted" the correct wage. Wausau simply gathered incomplete data in preparing Barton's claim. The statutory defenses to penalties are inapplicable.
This assignment does not present reversible error.

Attorney Fees and Interest
By its final assignments of error, Wausau contests the award of attorney fees and interest. It concedes for purposes of argument that it may have paid benefits at the incorrect rate, but asserts its conduct was not arbitrary, capricious or without probable cause.
The awarding of attorney fees is authorized by LSA-R.S. 23:1201.2. At the time of Barton's injury, it provided:
§ 1201.2. Failure to pay claims; discontinuance; attorney's fees.
Any insurer liable for claims arising under this Chapter * * * shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. * * *
Wausau correctly points out that the standard for imposing attorney fees is more rigid than for penalties. Malone & Johnson, § 389 (1989 p.p.). There is no hard, fast rule for imposing attorney fees in cases of partial payment. Simple miscalculation is usually not held to be arbitrary, capricious conduct. See Campanella v. State through Dept. of Highways, 328 So.2d 798 (La.App. 1st Cir.1976); Farris v. Ducote, 293 So.2d 589 (La.App. 3d Cir. 1974), writ denied 295 So.2d 814 (La.1974). Other cases have approved attorney fees where the insurer made no attempt to correct an error that was pointed out to it. See Green v. Provencal Tie Mill, 392 So.2d 722 (La.App. 3d Cir.1980); Darby v. Johnson, 118 So.2d 707 (La.App. 1st Cir.1960). Trial courts have great discretion in imposing or refusing to impose attorney fees.
*1255 Flint v. Rockwood Ins. Co., 455 So.2d 1251 (La.App. 4th Cir.1984); Heath v. Goldrus Drilling Co., 429 So.2d 530 (La.App. 3d Cir.1983), writ denied 434 So.2d 1096 (La. 1983).
The question is admittedly close. Mr. Novak conceded there was not enough "active work" on the case and no "follow-up" on the wage statement. Wausau corrected the problem, but only after Barton filed suit and began discovery. In this sense, Barton required an attorney's services in order to collect his full benefits. The trial court obviously felt that the handling of the case was excessively, and unnecessarily, substandard. Under the circumstances we cannot say the imposition of attorney fees was an abuse of discretion.
Wausau finally contends the trial court was wrong to impose interest on the awards. It claims that cases like George v. Marcantel Feed Stores Inc., 446 So.2d 345 (La.App. 3d Cir.1984), and Negem v. Paul Revere Life Ins. Co., 366 So.2d 194 (La. App. 2d Cir.1978), which impose such interest, should not be followed. In Negem, supra, this court used insurance statutes, LSA-R.S. 22:657 and 658, analogously to impose interest on a workers comp claim. The workers comp statute, R.S. 23:1201.2, now specifically excludes R.S. 22:658 C from workers comp claims. The jurisprudence, however, continues to allow interest on fees and penalties from date of judicial demand, without reference to Title 22. See Parnell v. Reed & Sims, 428 So.2d 899 (La.App. 1st Cir.1983), writ denied 435 So.2d 428 (La.1983); Thibodeaux v. Aetna Cas. & Sur. Co., 454 So.2d 1141 (La.App. 1st Cir.1984). Under the circumstances we do not feel this award was improper or an abuse of discretion. These assignments do not present reversible error.

Decree
For the reasons expressed, the judgment is amended to include an award of supplemental earnings benefits in accordance with the statute, LSA-R.S. 23:1221(3):
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Charles A. Barton, and against the defendants, Wausau Insurance Co. and Winn Rock Inc., for supplemental earnings benefits in the amount of the seventy-four percent of the difference between ninety percent of the average monthly wage of One Thousand, Four Hundred, Thirty-Two and 45/100 ($1,432.45) dollars, and the average monthly wages earned or able to be earned, subject to the limitations and credits (if applicable) provided by LSA-R.S. 23:1221(3)(a) and (b).
The judgment is in all other respects affirmed. Costs are assessed to the appellees, Wausau Insurance Company and Winn Rock Inc.
AMENDED AND AFFIRMED.