640 So.2d 674 (1994)
Theresa SKIPPER, Plaintiff/Appellant,
v.
ACADIAN OAKS NURSING HOME and Landmark Insurance Company, Defendants/Appellees.
No. 93-1502.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
Writ Denied September 14, 1994.
*675 Michael Benny Miller, Crowley, for Theresa Skipper.
Barry L. Domingue, Lafayette, for Acadian Oaks Nursing Home.
Before DOUCET, LABORDE, JJ., and BERTRAND[*], J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge, Pro Tem.
Theresa Skipper appeals a judgment from the Office of Workers' Compensation finding that her supplemental earnings benefits (SEB) were properly reduced because of a job offered to her by her former employer and denying penalties and attorney's fees for the late payment and miscalculation of benefits. For the following reasons, we reverse and render.

FACTS
Ms. Skipper was employed by defendant, Acadian Oaks Nursing Home, as a mental health technician. On September 27, 1990, she fell while attempting to move a mattress, injuring her back and aggravating a preexisting knee condition. She remained off work through February 25, 1991, when she resumed her full duties. However, she reinjured herself in April of 1992 when she was kicked by an unruly patient. She has not returned to work since the second incident.
At trial, the parties stipulated that Ms. Skipper's average weekly wage at the time of the September 27, 1990 accident was $308.81. Based upon this figure, her weekly rate of temporary total disability benefits (TTD) should have been $205.87. However, the record reveals that her compensation benefits *676 were not adjusted to conform to this rate until March 24, 1993.
Mr. Ray Tregre, an adjuster employed by Crawford and Company, testified on behalf of defendant, Landmark Insurance Company. Mr. Tregre began handling Ms. Skipper's claim on October 16, 1990. He issued her first compensation check on October 26, 1990 in the amount of $133.00. This figure was based upon information obtained from Ms. Skipper and her employer indicating that her regular rate of pay was $5.00 an hour for a 40 hour work week. Mr. Tregre admitted that he did not request Ms. Skipper's actual earnings for the four weeks preceding the accident. He also admitted that Ms. Skipper's check for her first week of disability, September 28 through October 4, 1990, was withheld and not paid until six months after the accident.
In May of 1991, Mr. Tregre received a letter from Acadian Oaks indicating that on November 9, 1990, Ms. Skipper received a raise in her hourly rate of pay to $6.58 an hour, retroactively effective before the date of her accident in September of 1990. On July 1, 1991, Mr. Tregre paid Ms. Skipper past due compensation and raised her weekly benefits to $175.00 per week based upon this information. The adjusted rate, however, was still below Ms. Skipper's stipulated average weekly wage, and Mr. Tregre again admitted that as of July 1, 1991, he still had not requested Ms. Skipper's actual payroll records.
On June 15, 1992, Ms. Skipper's attorney wrote to Acadian Oaks, requesting copies of her payroll records and certain medical reports. The letter stated, "You may be underpaying weekly compensation benefits" and requested that her rate be raised to approximately $200.00 per week rather than the $175.00 per week that defendant had been paying at that time. Approximately one month later, on July 29, 1992, Ms. Skipper filed the instant disputed claim.
Mr. Tregre acknowledged that he received the letter from plaintiff's counsel, but he did not remember if he conducted any investigation in response to it. The next action in the file was in October of 1992, when he converted Ms. Skipper's benefits from TTD to SEB, but with no reduction in the amount actually paid. On March 24, 1993, seven months after suit was filed, Mr. Tregre was informed by defense counsel that he had indeed been underpaying Ms. Skipper's benefits. At that time, Mr. Tregre adjusted her base compensation rate upward to conform to her actual earnings, but he also decided to reduce her SEB payments retroactively, based upon a part-time position allegedly offered to Ms. Skipper by Acadian Oaks in January of 1993.
Ms. Laurie Huffman, Director of Human Resources at Acadian Oaks, testified that the job of PBX operator, a light duty position, was available on three occasions: in October of 1992 on a "fill-in" basis with no set hours; in January of 1993 for 30 hours per week; and in February of 1993, again on a fill-in basis. Ms. Huffman testified that she personally did not offer Ms. Skipper the jobs that were available in October or January because "at that time I was dealing with Ray Tregre." She did offer Ms. Skipper a position in February, but that job was only on an as-needed basis, with no fixed hours per week. Ms. Huffman testified that Ms. Skipper initially accepted the job but failed to attend the orientation because of a family emergency.
Ms. Skipper testified that the only job offered to her was in February of 1993 on a "fill-in" basis. She stated that she was never offered a part-time position for 30 hours a week by either Ms. Huffman or Mr. Tregre. She did accept the one job that was offered to her, but she was unable to attend orientation for that position because of a family emergency. Ms. Skipper testified that she was never again contacted about the job, even though Ms. Huffman had told her that she could attend another orientation session.
This matter was tried on July 21 and 29, 1993. The hearing officer concluded that the defendants properly reduced the claimant's SEB payments based upon an offer of part-time employment in January of 1993. The hearing officer also declined to award penalties and attorney's fees for the miscalculation and late payment of benefits, finding that the *677 mistakes were voluntarily remedied before demand for payment was made.[1]

CALCULATION OF SEB
To qualify for SEB, a claimant must prove his inability to earn wages equal to 90% or more of the wages he was earning at the time of his injury. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); La. R.S. 23:1221(3). The medical reports submitted by both sides in this controversy established that at the time of trial, Ms. Skipper was incapable of returning to her previous occupation, but she could perform light duty and possibly moderate work. With this information, we find Mr. Tregre was justified in converting Ms. Skipper's benefits from TTD to SEB in October of 1992.
The next question for our consideration is the calculation of benefits, which necessarily requires an examination of the employee's earning potential.
If the employer wishes to contend that the employee is earning less than he is able to earn, then the employer bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. Daigle, supra, at pp. 1008-9.
The defendants sought to prove that in January of 1992 Ms. Skipper had been offered and had refused a part-time job paying $5.00 an hour for 30 hours a week. After carefully reviewing the testimony of Mr. Tregre and Ms. Huffman, we must respectfully disagree with the hearing officer's conclusion that the defendants' met this burden. The hearing officer chose to discount Ms. Skipper's denial that such a position was ever offered to her. However, we can find no basis in the record for such an unfavorable assessment. Ms. Skipper's testimony on this point was not only uncontradicted; it was also corroborated in part by the testimony of Ms. Huffman.
Ms. Huffman stated that she did not offer Ms. Skipper a job in either October of 1992 or January of 1993; the only time she personally spoke with Ms. Skipper was in February of 1993. This is entirely consistent with Ms. Skipper's testimony that the only job offered to her was in February of 1993. Mr. Tregre testified only that "her employer" offered Ms. Skipper a job in both October and January; yet, the employer's representative, Ms. Huffman, could not corroborate this testimony.
Defendants have shown that a part-time position as PBX operator was available in January of 1993, but we can find no evidence to support their claim that such a position was ever offered to Ms. Skipper. Nor do we find any evidence that such a position was available at the time of trial in the employer or employee's community or reasonable geographic region. The 30-hour a week job was apparently not available after January of 1993 because the position offered to Ms. Skipper in February was only on an asneeded basis, and at trial, Ms. Huffman testified that the only current opening would also be on an as-needed basis with no set hours per week.
We find that the hearing officer erred in concluding the employer met the burden imposed in La.R.S. 23:1221(3)(a) and as explained in Daigle. Accordingly, Ms. Skipper's benefits are ordered to be reinstated at the full amount.

PENALTIES AND ATTORNEY'S FEES
Ms. Skipper also argues that the hearing officer erred in failing to award penalties and attorney's fees for the late payment and miscalculation of benefits. Although the hearing officer found that the adjuster failed to investigate the claim fully, she nonetheless declined to award penalties and attorney's fees because she found that any mistakes were voluntarily corrected before demand was made.
We find the hearing officer erred in failing to award the 12% penalty of La.R.S. 23:1201(E) on the amount representing Ms. *678 Skipper's first week of benefits (admittedly not paid until six months after accident) and on the discrepancy between the benefits actually paid and those which were due based upon Ms. Skipper's stipulated average weekly wage.
Defendant insurance company has not offered an acceptable explanation as to why Ms. Skipper's first check was withheld for six months. Mr. Tregre testified that at some point Ms. Skipper had been overpaid compensation because she had returned to work, and the overpayment was deducted from her first week's check when it was finally paid. However, the record reveals that Ms. Skipper returned to work on February 25, 1991, long after her first check was due. We fail to understand how an overpayment that did not occur until February of 1991 justified the withholding of her first week's compensation check for such a long period of time.
Mr. Tregre testified that he calculated Ms. Skipper's benefits relying on information supplied by both Ms. Skipper and her employer. Mr. Tregre inquired as to her wage rate and the number of hours worked per week; however, he admitted that he did not request information as to her actual earnings in the four weeks prior to the accident. He also testified that he did not recall whether he further investigated the claim when he received notice from plaintiff's counsel that he may have been underpaying benefits. Ms. Skipper's benefits were not calculated at the proper rate until eight months after the instant suit was filed. We find this case is analogous to Barton v. Wausau Insurance Co., 545 So.2d 1248 (La.App. 2d Cir.1989), where penalties were imposed for the insurer's gathering incomplete data in preparing the plaintiff's claim. See also Pierce v. City of Abbeville, 602 So.2d 170 (La.App. 3d Cir. 1992).
To recover attorney's fees, a workers' compensation claimant must prove that the insurer's conduct in failing to pay all or part of a claim due within 60 days of written notice was arbitrary, capricious, or without probable cause. La.R.S. 23:1201.2. Although simple miscalculation of benefits is usually held not to be arbitrary and capricious, attorney's fees have been awarded where the insurer made no attempt to correct an error that was pointed out to it. Barton, supra, 545 So.2d at p. 1254.
The hearing officer concluded that the insurer voluntarily corrected its mistake before demand for payment was made. This finding is manifestly erroneous.
The insurer voluntarily raised Ms. Skipper's rate of compensation on one occasion, but even with this adjustment, her benefits were not paid at the correct rate. Plaintiff's counsel gave her employer written notice of this error in June of 1992 but apparently received no response. Suit was filed in July, with defendants answering in September of 1992. However, her benefits were not calculated at the correct rate until March 24, 1993. The insurer has offered no explanation for this lengthy delay. We find plaintiff is also entitled to reasonable attorney's fees for the prosecution of this claim at trial and on appeal, which we fix at $5,000.
For the above reasons, the judgment of the Office of Worker's Compensation is reversed. Judgment is rendered in favor of Theresa Skipper and against Acadian Oaks Nursing Home and Landmark Insurance Company, in solido, reinstating the plaintiff's SEB payments at $205.87 per week, retroactive through January 4, 1993; and against Landmark Insurance Company for 12% penalties on the amount of plaintiff's first disability benefit check and on the difference between the disability benefits actually paid and $205.87 per week; and against Landmark Insurance Company for $5,000 in attorney's fees. Legal interest is awarded on all amounts due from date of judicial demand until paid.
Costs of this appeal are assessed to defendants-appellees.
REVERSED AND RENDERED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The hearing officer also concluded that certain diagnostic tests requested by the plaintiff were neither necessary nor reasonable. This finding has not been appealed.