FREDERICKA HOMBERG WICKER, Judge.
12Claimant, Lisa Mulvihill, appeals the denial of her claims for workers’ compensation benefits, penalties, and attorney fees. Claimant argues the trial court erred by failing to: award her penalties because of defendant’s underpayment of indemnity benefits; award her penalties for defendant’s failure to timely approve two weeks of prescribed physical therapy; award her penalties for certain late payments of indemnity benefits; and, order reimbursement of certain out-of-pocket medical expenses. For the following reasons, we affirm in part, reverse in part, and remand this case for further proceedings consistent with this opinion.

*674
FACTS AND PROCEDURAL HISTORY

On November 13, 2008, claimant suffered a fall during the course and scope of her employment with the defendant, Jefferson Parish Hospital Service District No. 2. The parties do not dispute that this fall injured claimant’s right knee, entitling her to workers’ compensation indemnity and medical benefits arising from that knee injury. The parties dispute however whether claimant’s subsequent left knee pain and pathology was caused by her November 14, 2008 fall.
|aOn February 3, 2010, claimant filed the disputed claim for workers’ compensation giving rise to this appeal. In that claim, claimant alleged that she was due: reimbursement for out-of-pocket medical expenses to treat her left knee injury; attorney fees and penalties for defendant’s underpayment and late payment of her compensation benefits; and for defendant’s failure to authorize her physical therapy. A trial on the merits was held on August 3, 2011. At the workers’ compensation trial giving rise to this appeal, the following evidence was introduced.
Claimant’s treating physician, Dr. Jay Binder, testified that claimant told him that, starting in July of 2009, she was having pain in her left knee.[1] This pain continued and worsened from that point. In October of 2010, claimant had an arthroscopic surgery on her left knee. That surgery consisted of a synovectomy with a partial lateral meniscectomy and thermal treatment of an anterior cruciate ligament injury.
Dr. Binder further testified that he believed claimant’s left knee injury was caused or exacerbated by claimant’s “somewhat incomplete” “stop-and-go” rehabilitation treatment of her right knee, by falls caused by claimant’s right knee injury, or by both those factors combined.
On March 16, 2011, Dr. Gordon P. Nu-tik, an orthopedic surgeon chosen by defendant, examined claimant in order to render a second medical opinion on the cause of claimant’s left knee injury. After examining claimant and her medical records, Dr. Nutik opined that claimant’s left knee injury was not directly caused by claimant’s November 13, 2008 fall.
On June 27, 2011, Dr. Richard Meyer, a court-appointed independent medical examiner (IME), examined claimant. After his review of claimant’s 14records, Dr. Meyer opined, “there is no relationship based on [my] review of the records between her work injury of November 13, 2008, and the pathology that she had in the left knee or any pathology that she may currently have.”
The trial court rendered judgment denying each of claimant’s claims on January 11, 2012. This appeal arises from that judgment.

DISCUSSION

First Assignment

In her first assignment, claimant argues the trial court erred in failing to award penalties and attorney fees for defendant’s underpayment of her indemnity benefits. In its judgment, the trial court refused to award penalties and attorney fees because defendant caught its underpayment and immediately corrected it before claimant became aware of the error. Claimant argues that the trial court erred because the law mandates that she receive penalties and attorney fees for the underpayment. While we applaud the employer for finding its own error and correcting it, we agree with claimant — the law in this instance mandates penalties and attorney fees.
*675 The penalties and attorney fees claimant seeks are provided for in La. R.S. 23:1201(F) which states,
Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall |Bbe res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers’ compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers’ compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
[[Image here]]
(emphasis added).
These penalty and attorney fee provisions are penal in nature and are therefore strictly construed. Robichaux v. Terrebonne Parish Sch. Bd., 426 So.2d 241, 245 (La.App. 1 Cir.1983). While the hearing officer’s decision to award or refuse penalties and attorney fees is a matter of great discretion, the plain text of La. R.S. 23:1201(F) mandates the penalties and attorney fees against a defendant when it fails to pay in accordance with this section of law unless the defendant either reasonably controverted the payments or had no control over the payments not being made. Barton v. Wausau Ins. Co., 545 So.2d 1248, 1254 (La.App. 2 Cir.1989); La. R.S. 23:1201(F).
In Barton, penalties assessed under La. R.S. 23:1202(E) against an employer’s workers’ compensation insurer were upheld. There, the claimant usually worked overtime and was due increased benefits due to that fact. The defendant however paid claimant benefits based only on a 40-hour work week.
In Barton, the defendant argued that it should not be liable for penalties because the claimant provided the information that led to the underpayment. The defendant pointed out that claimant’s own “Statement of Facts” listed only 40 hours per week of work and that therefore, the claimant’s underpayment was his |fiown fault. The trial court recognized that the claimant had written only his regular time work, but also found that the statement was,
completed in two different handwritings and inks and the portions for total weekly and monthly wage were not filled by [the claimant]. Rather, [the claimant] *676 was only asked to fill in the number of hours worked per day and number of days worked per week. [The claimant] was not asked about overtime. Furthermore, [the claimant] testified this was the only form he received.
Id. at 1254. After finding that the defendant’s underpayments were not the claimant’s own fault, the court in Barton went on to state that,
[a]n accurate account of [the claimant’s] true earnings [was] available from [the employer’s] records. Mr. Novak, [the defendant’s] senior claims representative, said check stubs were the best source of this information. [The defendant] could have obtained the correct figures from [the employer] since it did not elicit complete data from [the claimant] himself. Mr. Novak admitted that he did not “follow up” on the Statement until 1987. The [trial] court concluded the evidence showed “less than thoroughness and attention to detail” in processing the claim. This does not appear plainly wrong.
Furthermore, we find nothing to indicate that nonpayment resulted from conditions beyond the [defendant] insurer’s control. At trial Mr. Novak admitted not knowing who handled the correspondence at various times, whether it was the New Orleans office or the West Monroe office. Perhaps if one office or agent had worked the entire case, the confusion would not have arisen. An insurer, however, cannot urge its own poor clerical work to escape penalties for nonpayment. LaHaye v. Westmoreland Cas. Co., 509 So.2d 748 (La.App. 3d Cir.1987). There is also no indication that anyone “reasonably controverted” the correct wage. [The defendant] simply gathered incomplete data in preparing [the claimant’s] claim. The statutory defenses to penalties are inapplicable.

Id.

Defendant argues that Barton “is distinguishable [from the instant case] because in [Barton ], the error came to the attention of the [e]mployer during the course and scope of the discovery process, which, of course, would have been initiated by the attorney for the [e]mployee. Here, there is no such proof.” While this is technically correct, it is incomplete. In Barton, the defendant who had been paying the claimant’s workers’ compensation benefits was not the claimant’s |7empIoyer — it was the employer’s insurer. When the employer answered the claimant’s interrogatories, the defendant discovered the underpayment and corrected it. While the defendant could have found an accurate account of the claimant’s earnings from the employer’s records, the defendant had no actual knowledge of the accurate amounts of the claimant’s earnings. The defendant was assessed penalties merely because it failed to pay the claimant the full amount of his benefits without a statutory excuse.
Defendant further argues that it should not be liable for penalties because it caught and corrected its underpayment itself, and there is no evidence that claimant caused this underpayment to be discovered or corrected. For defendant’s argument to be persuasive, this Court would have to read the penalty provision of La. R.S. 28:1202(F) as permissive. Defendant, through the cases it cites, implicitly argues that penalties should not be assessed against it because it did not arbitrarily and capriciously underpay the claimant.
In support of this argument, defendant cites Comeaux v. Sam Broussard, 94-1631 (La.App. 5 Cir. 05/31/95), 657 So.2d 449. In Comeaux, the employer underpaid the claimant’s disability benefits by $36.73 for each of the forty-seven weeks that it paid *677 the claimant’s compensation benefits. As soon as this underpayment was brought to the employer’s attention however, it sent a lump-sum payment for the amount owed to the claimant. There, this Court reasoned La. R.S. 23:1201.2 only held an employer liable when it arbitrarily and capriciously underpaid a claimant. We found that the employer’s underpayment was not arbitrary and capricious and therefore the employer was not liable for penalties and attorney’s fees.
Comeaux, however, is not relevant to this appeal because it was decided using the arbitrary and capricious standard imposed by La. R.S. 23:1201.2, a law |8that was repealed before the events now in question by La. Acts 2003, No. 1204, § 2.[2] That act amended and reenacted La. R.S. 23:1201(F) leaving intact its mandatory penalties through its use of the word “shall.” That same act also enacted a new subsection, La. R.S. 23:1201(1), which subjected employers to penalties if they discontinued benefits in a way that was found to be “arbitrary, capricious, or without probable cause.”
Under the plain text of the law, a claimant seeking penalties and attorney fees under La. R.S. 23:1201(F) does not need to prove that payments due were arbitrarily or capriciously underpaid. Such penalties are mandated when a party fails to pay in accordance with La. R.S. 23:1201 without a valid excuse. Therefore, we find that the trial court erred by not imposing mandatory penalties and attorney fees on defendant for its unexcused underpayment of benefits due to claimant.

Second Assignment

In her second assignment of error, claimant argues that the trial court erred in failing to award penalties for defendant’s failure ’ to timely approve the last two weeks of physical therapy prescribed by claimant’s treating orthopedist. For this assignment, claimant again argues that La. R.S. 23:1201(F) made penalties against defendant mandatory.
IflOn November 10, 2009, Dr. Jay Binder, claimant’s treating orthopedist, prescribed claimant four weeks of physical therapy. Bridgette Preston, a claims adjuster, was responsible for approving this treatment on behalf of defendant. Relying on a “utilization review” she had received, Ms. Preston approved only the first two weeks of the physical therapy. Claimant did not appeal the decision and completed her two weeks of authorized physical therapy on November 30, 2009. Two weeks later, on December 14, 2009, Dr. Binder again requested authorization for physical therapy for claimant. The trial court stated in its judgment,
*678 Ms. Preston at that point did not deny the request. She did not tell Dr. Binder’s office that request had already been denied. She instead simply requested that they contact the medical review agency and explain to them why the additional two weeks were needed. Apparently Dr. Binder’s office did not follow up because when Ms. Preston was reviewing the file about two weeks later she discovered that there had been no therapy. Therefore, she followed up with Dr. Binder’s office and this time the procedure was followed. They contacted the medical review agency and the treatment was approved.
In summary, [e]mployer did not deny treatment. They simply asked the doctor to follow procedure which for some reason did not happen.
Claimant did not resume her physical therapy until January 6, 2009.
Defendant argues that its actions were proper under the statute because it was allowed to rely on the utilization review process in determining whether it should authorize claimant’s treatment. Defendant cites La. R.S. 23:1142(B)(b) for the proposition that the legislature has now recognized that defendant’s reliance of the utilization review, conducted by a doctor who did not examine claimant, was proper.[3] That legislation states in applicable part,
(b)(i) The payor may contract with a utilization review company to assist the payor in determining if the request for nonemergency diagnostic testing or treatment, in an amount which exceeds seven hundred fifty dollars, is a medical necessity as provided pursuant to this Chapter.
| in(ii) A medical necessity determination by a utilization review company and the payor’s consent to authorize the requested nonemergency diagnostic testing and treatment shall require only a review of the claimant’s medical records and shall not require an examination of the employee.
La. R.S. 23:1142(B) (emphasis added).
Defendant correctly argues that it was allowed to use a utilization review company which did not have a doctor personally examine the claimant. Indeed, this Court finds no error in Ms. Preston initially approving only the first two weeks of claimant’s requested physical therapy. The statute’s language also makes it clear however that a utilization review can only “assist” in defendant’s own determination of whether it should authorize treatment.
Here, defendant shirked its own responsibility to authorize, or reasonably controvert, claimant’s request for two additional weeks of physical therapy. After claimant’s first two weeks of physical therapy, Dr. Binder called Ms. Preston requesting two additional weeks. At that point, it was incumbent on Ms. Preston to approve or refuse Dr. Binder’s request, with or without the assistance of a utilization review at her discretion. However, instead of approving or refusing the request, Ms. Preston imposed an additional procedural and administrative burden on Dr. Binder by asking him to contact defendant’s utilization review board. Dr. Binder did not take this additional step and two weeks passed without any action. After this delay, Ms. Preston, for reasons she could not recall in testimony, called her utilization review board for its opinion and then authorized claimant’s additional physical therapy.
*679 There is no evidence in the record that it was defendant’s procedural policy for claimant, or her doctor, to interact directly with the utilization review board. Further, even if such policy existed, it is defendant’s own responsibility to authorize or refuse requests for medical treatment. Utilization review boards areJjjallowed for the benefit of employers. If an employer wishes to take advantage of a utilization review board, it is the employer’s duty to use and communicate with that board. In this case, we find that defendant failed to authorize medical treatment by refusing to act until Dr. Binder interacted with the utilization review board. The law mandates that defendant be assessed penalties and attorney fees because of this failure.

Third Assignment

Next, claimant argues that the trial court erred when it failed to award her penalties for certain late payments of indemnity benefits by defendant. Claimant asserts that, under the due dates set by La. R.S. 23:1201(B), defendant’s payments to her for pay periods between March 10, 2009 and March 30, 2010 were between one and six days late. Claimant reasons that her first payment was due on the fourteenth day after her employer had notice of her injury and that subsequent payments were then due to her at the interval of every fourteenth day after that day. Defendant argues that its payments were made at the proper time because it paid claimant her benefits on the same intervals on which it paid its other employees.
The award of penalties for late payments is governed by La. R.S. 23:1201 which states in applicable part,
(A)(1) Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom, such payments shall be made by mail, upon the employee giving to the employer a sufficient mailing address. However, a longer interval, not to exceed one month, may be substituted by agreement without approval of the director. An interval of more than one month must be approved by the director.
[[Image here]]
(B) The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has | ^knowledge of the injury or death, on which date all such compensation then due shall be paid.
La. R.S. 23:1201 (emphasis added).
These penalty and attorney fee provisions are penal in nature and therefore strictly construed; such awards are warranted only when the facts negate probable cause for nonpayment. Robichaux v. Terrebonne Parish Sch. Bd., supra.
This statute proscribes that an employer pay an employee’s workers’ compensation benefits at the time and place where it typical pays its employees’ wages. It does not mandate, as claimant contends, that the employer begin a series of payment dates exclusive to an individual injured worker.
Further, the statute’s language requiring claimants to be paid “as near as possible” to when claimants were paid their wages before their accidents builds in flexibility for employers. For this Court to require idiosyncratic payments to each claimant would unduly complicate the employer’s payroll and read this flexibility out of the statute’s language.
*680 For these reasons, we find this assignment to be without merit.

Fourth Assignment

In her final assignment of error, claimant argues that the trial court erred in failing to order that she be reimbursed for her out-of-pocket expenses for her left knee injury. The trial court refused to grant claimant these expenses because it found that claimant’s left knee injury was not caused by her November 18, 2008 fall or any other compensable injury.
An appellate court’s review of the workers’ compensation judge’s findings of fact is governed by the manifest error or clearly wrong standard and will not be disturbed absent such a finding. Barbarin v. TLC Home Health, 02-1054 (La.App. 5 Cir. 4/29/03), 845 So.2d 1199, 1202; Chaisson v. Cajun Bag Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, 380. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Barbarin, 845 So.2d at 1202; Chaisson, 708 So.2d at 380. Where there are two permissible views of the evidence, a fact finder’s choice between them can never be manifestly erroneous or clearly wrong. Barbarin, 845 So.2d at 1202; Chaisson, 708 So.2d at 381. Thus, if the fact finder’s findings are reasonable in light of the record, the court of appeal may not reverse or modify the judgment. Barbarin, 845 So.2d at 1202; Chaisson, 708 So.2d at 381.
To make its determination that claimant’s left knee injury was not compensable under workers’ compensation law, the trial court carefully examined the credibility of differing expert opinions. It considered the testimony of Dr. Binder, claimant’s own treating physician. He opined that claimant’s November 13, 2008 fall caused claimant’s later left knee injury. The trial court also considered the opinions of defendant’s expert, Dr. Nutik, and the IME, Dr. Meyer. Both of these experts opined that claimant’s left knee injury was not caused by her November 13, 2008 fall.
Further, this Court notes that Dr. Meyer was the IME appointed by the trial court. La. R.S. 23:1123 provides for the appointment of an IME when, as here, there is a conflict in the medical evidence. The statute provides that the IME’s report shall be prima facie evidence of the facts therein stated. As the court in Bell v. Mid City Printers, Inc., explained,
The courts have interpreted La. R.S. 23:1123 to mean that an IME’s medical conclusions should be given significant weight because the IME is an objective witness. Nevertheless, the opinion of the IME is not conclusive, and the trial judge must evaluate all of the evidence presented in making a decision as to the claimant’s condition. The weight given to the testimony of an IME can be lesser or greater depending on the qualifications or expertise of the physician, the type 114of examination he performs, his opportunity to observe the patient, his review of other physicians’ examinations and tests, and any other relevant factors.
2010-0818 (La.App. 4 Cir. 12/22/10), 54 So.3d 1226, 1234 (citations omitted).
Upon review of the record, and considering the significant weight afforded Dr. Meyer as an IME, this Court finds that the trial court’s judgment was reasonable. Therefore, claimant’s assignment that the trial court erred by not awarding her out-of-pocket expenses arising from the treatment of her left knee is without merit.

CONCLUSION

Considering the above findings, we reverse the trial court’s judgment in so far as it failed to award attorney fees and *681 penalties to claimant for defendant’s failure to pay the full amount of compensation benefits it owed and for defendant’s failure to authorize additional physical therapy for claimant after her doctor requested such. We affirm the trial court’s judgment in all other respects and remand this case for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, REMANDED.

. This testimony was given in a deposition before trial.

. Before the 2003 amendments to the Workers’ Compensation law, the Louisiana Supreme Court clarified that La. R.S. 23:1201 solely addressed the timeliness of payments. In Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 44, the Court stated, "[t]he 1983 revisions also amended La. [R.S.] 23:1201.2 to require an employer or insurer to pay the amount of any claim due under the Act within sixty days of written notice and to pay all reasonable attorney’s fees for the prosecution and collection of such claim if the employer's or insurer’s failure to pay timely was arbitrary, capricious or without probable cause. Section 1201.2, as amended in 1983, further provided that an employer or insurer who discontinues payment of claims "due and arising” under the Act shall be subject to payment of all reasonable attorney’s fees for the prosecution and collection of such claims if the discontinuance was arbitrary, capricious or without probable cause_ Since this 1995 amendment, Section 1201.2 now addresses solely the discontinuance of payment of claims, while Section 1201 now addresses solely the timeliness of commencement of benefit payments and timeliness of continued payments.” (emphasis added).

. La. R.S. 23:1142(B)(b), enacted in 2012, went into effect after the events at issue in this appeal. Therefore, this legislation is persuasive, but not governing.