676 So.2d 861 (1996)
Mickey J. COURVILLE, Plaintiff-Appellee,
v.
OMNI DRILLING, Defendants-Appellants.
No. 96-174.
Court of Appeal of Louisiana, Third Circuit.
July 10, 1996.
*862 W. Glenn Soileau, for Mickey J. Courville.
David Keith Johnson, Baton Rouge, for Omni Drilling.
Before COOKS, WOODARD, AMY, SULLIVAN and GREMILLION, JJ.
WOODARD, Judge.
The worker's compensation administrative hearing officer awarded the plaintiff-appellee, Mickey J. Courville, Supplemental Earnings Benefits (SEB) and penalties and attorney fees. The defendants-appellants, Omni Drilling and Louisiana Worker's Compensation Corporation (LWCC), appeal that decision. We amend and affirm.

FACTS
Courville was an employee of Omni in the course and scope of his employment when he was injured on September 28, 1994. He was provided with medical care and properly paid temporary total disability (TTD) worker's *863 compensation benefits from September 28, 1994, through March 9, 1995. Courville's indemnity benefits were then terminated and he filed this claim. After a hearing on the matter, the hearing officer ruled that Courville was entitled to temporary total disability September 28, 1994, through March 15, 1995, supplemental earnings benefits (SEB) March 16, 1995, through June 30, 1995, and to payment of all medical bills, medication expenses, and transportation expenses attributable to the accident of September 28, 1994. The hearing officer also concluded that LWCC had been arbitrary and capricious in refusing to pay SEB to Courville after March 9, 1995, and assessed it $2,000 in penalties and $2,000 in attorney fees.
The defendants have appealed that decision. The plaintiff, although submitting a brief, has neither appealed in his own right nor answered the defendants' appeal.

ASSIGNMENTS OF ERROR
Defendants assign two errors: (1) that the hearing officer was manifestly erroneous in awarding SEB after March 9, 1995, because Courville failed to produce any evidence of disability beyond that date, or, alternatively, that the hearing officer erred in awarding SEB based upon a zero earnings basis; and (2) that the hearing officer manifestly erred in awarding penalties and attorney fees on the ground that the defendants were arbitrary and capricious in terminating Courville's indemnity benefits.

LAW & ARGUMENT
The scope of appellate review for worker's compensation cases is the same as that which is applicable to district court findings. The hearing officer's findings of fact are not to be set aside by the court of appeal unless those findings are clearly wrong/manifestly erroneous in light of the record reviewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. The reviewing court must give great weight to the trier of fact's factual conclusions, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even if the appellate court believes its own evaluations and inferences are as reasonable. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992); Frelow v. Mills, 94-799 (La.App. 3 Cir. 12/7/94); 647 So.2d 475, writ denied, 95-65 (La. 3/10/95); 650 So.2d 1180.

ENTITLEMENT TO SEB
We cannot say that the hearing officer erred in concluding that Courville was entitled to supplemental earnings benefits. To be entitled to SEB, the claimant bears the burden of proving by a preponderance of the evidence that his work-related injury prevents him from earning wages equal to 90% or more of his wages at the time of his injury. La.R.S. 23:1221(3); Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94); 633 So.2d 129; Woolley v. CAS Refining, Inc., 94-648 (La.App. 3 Cir. 1/11/95); 651 So.2d 860, writ denied, 95-1158 (La. 6/16/95); 655 So.2d 331. An analysis of the facts and circumstances of the particular case is employed, the court keeping in mind the tenet that worker's compensation law is to be liberally construed in favor of coverage. Smith, 633 So.2d 129. In determining whether the claimant is entitled to SEB, the court must weigh all evidence, medical and lay, to determine if the claimant has met his burden of proof. Woolley, 651 So.2d 860. Once the employee meets his burden of proof, the employer then has to show that the employee is physically able to perform a certain job and that the job was offered to the employee, or was available to the employee, within the employee's or employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Smith, 633 So.2d 129.
In the instant case, LWCC terminated Courville's worker's compensation payments based on a medical release, dated March 8, 1995, by Dr. Steven J. Snatic, Courville's treating physician. However, the hearing officer specifically found that Dr. Snatic had not released Courville to return to work without restriction until June 21, 1995; the release was conditioned upon Courville being allowed to take medication while working, which Omni forbade. Thus, LWCC should not have terminated the payments based on the March 8 release.
*864 Defendants stand their ground on a literal, narrow, out of context reading of Dr. Snatic's release of March 8, 1995, which simply noted in longhand on a prescription pad slip that "Mr. Courville is allowed to return to work at full duty." However, Dr. Snatic forwarded to LWCC a copy of a letter dated March 2, 1995, that he had written to Dr. Warren Degatur, Courville's family physician, which should have put LWCC on notice that Courville was not being released without restriction. That letter read, in pertinent part, as follows: "My intention is for Mickey to return to work with medication if that will be allowed by his employer. If his employer will not allow him to return to work with medication, we may have a problem that cannot be successfully handled medically." Hence, Dr. Snatic had clearly informed LWCC that Courville's release was to be contingent. Courville has stated that Omni would not allow him to return to work until he was released without restrictions, and Omni has never denied Courville's statement. The defendants microscopically dwell on the March 8 release as if that were the only opinion by Dr. Snatic, and the only medical, on record. The hearing officer, however, found that the medical evidence "overwhelmingly preponderates in favor of the claimant." The defendants' only evidentiary challenge to this is, again, the release of March 8. Clearly, the treating physician, Dr. Snatic thought that Courville had not completely recovered, because he did not unconditionally release him to return to work until June 21. Too, while insisting that Courville was offered a job by Omni, the defendants are careful not to state that the job was offered with the stipulation that Courville could take medication while on that job. Omni and LWCC never directly answer whether Courville would have been allowed to perform the employment, supposedly offered him, while under medication; and if Omni would have allowed him to perform that employment while under medication, whether he could have done so safely. The worker's compensation claimant seeking SEB does not have to accept employment that involves appreciable and significant risk to his well-being. Id. Working without needed prescribed medication could very well have involved such a risk, and, depending on the job, working under the influence of needed medication could have also involved a risk. The defendants never attempted to clarify those two points.
Thus, in light of both lay and medical evidence, we cannot say that the hearing officer committed manifest error when she found that the defendants terminated indemnity benefits prematurely and that Courville was entitled to SEB until he was unconditionally released without any restrictions.

SEB BASED ON ZERO EARNINGS
As a component of this assignment of error, the defendants also contend that the hearing officer erred in calculating Courville's SEB based on a zero earnings, as he had some earnings between March 8, 1995, and June 21, 1995. Courville admitted at trial that, between the time of his conditional release and his unrestricted release, he did have sporadic earnings of $100 in March, $125 in April, $50 in May, and $400 or $500 in June. The defendants state in their brief to this court that these earnings should have served to reduce the amount of SEB to which he was entitled. We agree. A worker's compensation beneficiary is entitled to a SEB amount calculated by subtracting the average post-injury monthly wage he earns, or is capable of earning, from his average pre-injury monthly wage, and then multiplying the difference by sixty-six and two-thirds (662/3%) percent. La.R.S. 23:1221(3)(a); Margin v. Barthelemy, 93-2224 (La.App. 4 Cir. 5/17/94); 638 So.2d 291, writ denied, 94-2172 (La. 11/18/94); 646 So.2d 378. In the case sub judice, the only evidence on record, Courville's testimony, establishes that his average monthly post-injury wage for the four-month span constituting his SEB period of entitlement was $181.25 a month (an average of $400 and $500 is used for June). That figure, $181.25, should be subtracted from his pre-injury average monthly wage, and the result multiplied by sixty-six and two-thirds (662/3%) percent for the SEB amount.
Thus, to this extent, the judgment of the hearing officer is amended.

*865 ATTORNEY FEES & PENALTIES
For the same reason, we cannot say that the hearing officer was manifestly wrong in determining that LWCC was arbitrary and capricious in terminating those benefits prematurely. Whenever an employee's right to benefits has not been reasonably controverted, penalties are in order. Harris v. Langston Co., Inc., 94-1266 (La.App. 3 Cir. 4/5/95); 653 So.2d 789, writ denied, 95-1178 (La. 6/23/95); 656 So.2d 1020. A worker's compensation claim is reasonably controverted if the employer or insurer had sufficient factual and medical information upon which to base a decision to terminate benefits. Id. Additionally, a worker's compensation claimant is entitled to attorney fees if the employer or insurer acts arbitrarily, capriciously, and without probable cause in withholding or terminating benefits. La.R.S. 23:1201.2; Id. "Termination of benefits is not arbitrary and capricious when based on competent medical evidence." Id. at 796. "It is incumbent upon the insurer to make reasonable efforts to ascertain the employee's exact medical condition at the time of termination of benefits." Id. at 797. Whether termination is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of termination of benefits. Id. The hearing officer has great discretion in awarding attorney fees and penalties, and her decision will not be disturbed on appeal absent manifest error. Dietz v. Guichard Drilling Co., 626 So.2d 79 (La.App. 3 Cir.1993).
LWCC seems to have pounced at the chance to use the March 8, 1995, release as a pretext to terminate Courville's payments, arbitrarily isolating it out of context of all other evidence, opinion, and developments, and especially without considering the March 2, 1995, letter from Dr. Snatic to Dr. Degatur, a copy of which had been forwarded to LWCC. At the very least, to reasonably controvert the issue, and to not be found to have acted arbitrarily, LWCC should have considered the March 2 letter and the March 8 release as creating a question which required further investigation before taking decisive action. Instead, LWCC simply selected what best suited its interest, ignored all else, and took the drastic action of terminating all payments without further consideration.
Therefore, this court finds, the hearing officer not having abused her discretion, this assignment of error also to be without merit.

CONCLUSION
As stated in this opinion, we amend the administrative hearing officer's calculation of the SEB amount based on zero-sum post-injury earnings. In all other respects, the judgment is affirmed. Defendants-Appellants are assessed equally for costs of this appeal.
AMENDED AND AFFIRMED.
AMY, J., dissents and assigns written reasons.
AMY, Judge, dissenting.
I respectfully dissent. In my opinion, the claimant did not meet the burden of proof required for the award of supplemental earnings benefits.
In order to receive supplemental earnings benefits, the claimant bears the initial burden of proving by a preponderance of the evidence that he is unable to earn wages equal to 90 percent or more of the wages he was earning at the time of the injury. La. R.S. 23:1221(3)(a); Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94); 633 So.2d 129; Mullins v. Courtney Equipment, 95-989 (La.App. 3 Cir. 1/31/96); 670 So.2d 329. In the present case, the medical records indicate that Courville had improved by March 2, 1995 and that Dr. Snatic intended for Courville to "return to work with medication if that will be allowed by his employer." However, in his subsequent appointment with Dr. Snatic on March 8, 1995, Courville received a full release stating that "Mr. Courville is allowed to return to work at full duty." In my view, following the full medical release given on March 8, 1995, the claimant did not offer sufficient evidence of his ongoing disability to support the hearing officer's award of supplemental earnings benefits. Therefore, the hearing officer was clearly wrong in awarding SEB and should be reversed.
*866 Notwithstanding, the majority finds that Courville met this initial burden. As previously stated, I respectfully disagree; however, my opinion differs from the majority's in an additional respect. When the claimant meets the initial threshold showing of proof, the burden shifts to the employer who, in order to defeat or reduce an award of supplemental earnings benefits, must prove that the employee is earning less than he is able to earn. The employer must meet this burden by proving by a preponderance of the evidence that the claimant was offered a job which he was "physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region." La.R.S. 23:1221(3)(c)(i); Daigle v. Sherwin-Williams Co. 545 So.2d 1005 (La.1989); Skipper v. Acadian Oaks Nursing Home, 93-1502 (La. App. 3 Cir. 6/1/94); 640 So.2d 674, writ denied, 94-1795 (La.10/14/94); 643 So.2d 163. If the claimant contends that he is unable to perform the employment offered as a result of pain, the burden returns to him and he must prove by clear and convincing evidence that he is unable to perform these duties solely as a consequence of substantial pain. La.R.S. 23:1221(3)(c)(ii); Anderson v. Biedenharn Bottling Group, 95-646 (La.App. 3 Cir. 11/2/95); 664 So.2d 588; Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449.
The record substantiates that subsequent to March 8, 1995, and even though claimant had apparently been given an unconditional release by Dr. Snatic to "return to work at full duty," defendant offered a light-duty job to Courville which would provide equal pay and allow him to work in the shop, cleaning tools, instead of in his previous field position, performing heavy manual labor as a driller's helper. Rita Darbonne, the defendant's office manager, testified that when Courville returned to Omni with the work release from Dr. Snatic, such a position was offered. The medical release demonstrates that plaintiff was physically able to perform this job. In my view, the burden of proof shifted to the claimant at this point, to prove by clear and convincing evidence that the defendant would not allow him to work while continuing his medication, and that he would have been in substantial pain without use of the medication, such that he would have been unable to perform the job. I do not find that claimant offered the required proof of either.
Accordingly, for the foregoing reasons, I would reverse the hearing officer's award of supplemental earnings benefits and the finding that defendant was arbitrary and capricious in the handling of this matter.